### SOCIETY FOR PROPAGATING THE GOSPEL *vs.* JEHU YOUNG.

Where plaintiffs sue as a corporation, and the general issue is pleaded, they may still be required to prove their incorporation.

A power of attorney, unless to convey real estate, need not be acknowledged or recorded.

A jury may from slight circumstances presume, that a proprietary meeting was duly convened, when the intervening lapse of time has been twenty years.

In a partition among proprietors of land, though one of them be misnamed, yet if, from all the proceedings, he can be identified, he is entitled to recover the share, which seems to have been intended for him.

An individual or corporation, beside their true names, may have, and take by, a name of reputation.

A jury must decide, whether the description of a party in a partition, when not repugnant, was intended for the demandant.

THIS was a writ of entry for lot No. 6, in the 11th range, in Concord, in this county. The action was commenced December 29th, 1809, and the demandants counted on their own seisin within thirty years. The tenant pleaded a disclaimer as to one-seventieth undivided and never disseized as to the residue.

At the trial here, November term, 1819, the demandants were required to prove their incorporation ; and as evidence of it they offered a writing, which purported to be an official copy of their charter, and it was sworn to be a true copy by a Mr. *Hall,* who had compared it with the original. The

objections to the necessity for this testimony on the one
hand, and to its sufficiency on the other hand, were both overruled.

The demandants next proved, that, in August, A. D. 1763, the town of Concord was duly granted by the governor and council for the province of New-Hampshire in seventy shares or rights ; one which was designated as a " glebe for the " church of England, as by law established ;" and another " for the society for propagating the gospel in foreign parts."

It appeared, also, that in July, A. D. 1799, a meeting of the proprietors was warned and holden with the view of making partition of the land among them. The evidence to show the legality of this meeting was admitted, subject to two exceptions. 1st. *Edward Little*, who petitioned for it in behalf of one-fourteenth of the proprietors, derived his authority under a power of attorney, neither acknowledged nor recorded. 2d. The advertisements, to notify the meeting, though duly published in the New-Hampshire Gazette, were not directly proved to have been posted up in Concord, except by the affidavit of a man now dead, and which affidavit was not certified in legal form. But at the same time it appeared, that a partition was made at that meeting, and that most of the town had been since settled and occupied in conformity to it.

This partition purported to be among all of the proprietors, and extended to the greater part of the town. The whole number of seventy rights was written down in a perpendicular line from No. 1 to No. 70 ; then the name of a distinct proprietor purported to be written against each number ; and then against each proprietor the lots designated for his share. Against one of these seventy numbers was written " Glebe " lots"; and three lots of land, which was the usual quantity to a right, were described opposite. Against another number was written " Church of England lots," and opposite to it were also described three lots of land, one of which constitutes the premises now demanded. Against none of the numbers was written either " glebe for the church of Eng-

So. Prop. Gos.
vs.
Young.

"land as by law established," or "the society for propagat-
"ing the gospel in foreign parts."

The demandants proved, that when their charter was
granted in the 13th Wm. III., many of its members were the
highest dignitaries in the church of England; and they offer-
ed to show by reputation, that all its members since had
belonged to that church; that the tenets of that church were
propagated by the society, and that hence it was sometimes
called "the church of England society." They contended,
therefore, that "the church of England lots" in the partition
were intended for them.

The reputation above mentioned, not being denied by the
tenant, a verdict was by consent taken for the demandants,
subject to future advisement upon the different questions
presented in the case.

*P. R. Freeman*, counsel for the demandants.

*Swan*, for the tenant.

WOODBURY, J.   Where a private corporation is plaintiff,
it seems to be well settled, that even under the general issue
the defendant may require proof of the incorporation. *Lord.
Ray.* 1535.—8 *John.* 378.—14 *ditto* 245.—1 *John. Ca.* 132.
—10 *Mass. Rep.* 91.*

The proof, which was here offered of that fact, was an
official copy of the charter; but being unable to authenticate
the certificate, the demandants proved its accuracy by a
witness, who had compared it with the original; and hence
as a sworn copy it was clearly competent.(1)

(1) 1 Phil. Ev.
291.—1 Es.
Ca. 263.

Had the act done under the power of attorney been an
actual conveyance of real estate, the next objection, that
the power was neither acknowledged nor recorded, might
prevail.   7 *D. & E.* 207.—*Co. Litt.* 52, *note.*—*Com. Di.*
"*Attorney*" C. 5.—*Chipman's Rep.* 150.    But the act done
was merely a petition for a proprietary meeting; and when
the partition itself was made, the proprietors in person, for
ought which appears, were all present.

---

* 19 John. 303.

So. Prop. Gos.
*vs.*
Young.

As to the affidavit to prove the posting of the advertisements in Concord, it certainly was incompetent evidence. 4 *D. & E.* 290.—*Tyler R.* 44, 49.

But independent of that, there was other testimony sufficient to warrant a jury in the presumption, that the meeting was duly convened. At the time of the trial, more than twenty years had elapsed since the transaction, and during that period also the lands had mostly been held and cultivated in conformity to the partition. The intervening death of perhaps the only person, who had direct knowledge of the posting of the advertisements, is in this case a strong illustration of the propriety of the principle that the meeting should be presumed regular, after such a lapse of time and such an acquiescence in what was then done. 2 *Maule & Selw.* 558. —15 *John.* 89.—3 *Mass. Rep.* 399.—14 *ditto* 30, 177, 147.

The only remaining question relates to the description of the demandants in the partition; and it is a question of some difficulty. If they and their share are designated with sufficient certainty, by the expression "Church of England Lots"—and by the subsequent specification of the lots, then they ought to recover; but otherwise, the partition as to them is void, and they being entitled to only one seventieth in common (and one seventieth of these premises being disclaimed,) the tenants ought to recover.

In this inquiry it is important to bear in mind, that the demandants were without dispute original proprietors of one seventieth part of the town, and that the object of the partition was not to transfer land to strangers, but only to divide it among those already known and interested in the original grant. In deeds the utmost certainty now required concerning the names of the parties is, that " there be sufficient shewn to ascertain the grantor and grantee and to distinguish them from all others." *Bac. Ab.* " *Grant*" 6.—*Perk. sec.* 36, 42.— *Co. Litt.* 3.—*Cro. Ja.* 518.—*Str.* 316.—10 *Mass. Rep.* 20.

" It is, also, the office of judges to take and expound the " words which the common people use to express their mean- " ing, according to their *intents*, and not according to the " very definition." 6 *Coke* 65, *Sir Mayle Finch's case.* It is,

So. Prop. Gos.
*vs.*
Young.

also, well settled, that a grantee, if known by two names, may take under either. 10 *Coke* 126.—1 *Phil. Ev.* 411, 416.—3 *Maule & Selw.* 250, 538.—2 *East C. L.* 967.—12 *John.* 77.

*Nomen dicitur a noscendo, quia notitiam facit.* 6 *Coke* 63.

The first circumstance to show, that the demandants were intended by the " Church of England," is that being proprietors, and the partition having been designed of all the proprietors—there is no other name in the list of the grantees, which is so appropriate as this to the demandants.

The second circumstance is, that this name cannot apply to any of the other proprietors without assigning to them a double share in the partition. A third circumstance is, that if this name does not apply to them, they have no share whatever in the partition, although original proprietors, and although the proceedings purport to set off a share to each original proprietor.(1)

(1) 10 Coke 125.—11 Coke 20.

Another circumstance is, that in different parts of the state, the lots, that belong to the demandants, are sometimes called " Church of England lots." The first and present members of the society have professed the tenets of that church ; the funds of the society are employed to propagate those tenets ; the grant of a right in this township was to aid them in the same cause ; and hence it would be natural to designate the lots, as " Church of England lots."

The last and a strong circumstance *ab inconvenienti* is, that unless the demandants were thus designated, the whole partition as respects them is void, and the occupant of every lot in town will be subjected to the hazard of a prosecution for the undivided seventieth of it, owned by the demandants.

We are inclined to think, however, that this is a case, where the description of the party, though not repugnant or altogether uncertain, is still somewhat incomplete ; and consequently, to take the opinion of the jury, whether the demandants were intended by the " Church of England" as used in the partition, the verdict, (having been returned on the suggestion of the court) may be set aside, if the tenant desires it. 2 *John Cases* 267. If not desired,

*Judgment on the verdict.*